C.R. McRae appeals from judgments in two consolidated cases which awarded him an attorney's fee lien of $5,000.00 in each case. The plaintiffs in those cases cross-appeal, asserting that McRae was entitled to no lien at all. We agree with the appellees/cross-appellants and, therefore, reverse the trial court's judgments awarding the liens to McRae.
Jessie Lee Sawyer and Juanita Peterson were injured in 1979 when a tractor-trailer truck owned by McDonald Petroleum Company collided with an automobile occupied by them. C.R. McRae contracted with Sawyer and Peterson to act as their attorney in the pursuit of legal remedies against McDonald Petroleum and Chevron U.S.A., Inc., for whom McDonald was allegedly acting as agent.
McRae is an attorney who lives in Mississippi, and is licensed to practice law in that state. He is not licensed to practice law in Alabama, however, where the accident occurred and where Sawyer and Peterson reside. McRae associated the Mobile, Alabama, firm of Silver and Voit, P.A., to act as local counsel. He then filed separate suits on behalf of Sawyer and Peterson in Mobile County Circuit Court. The suits were consolidated upon motion of the defendants. A summary judgment was granted in favor of Chevron, and the case was informally stayed pending an appeal of the summary judgment.
While the appeal was pending, Sawyer and Peterson discharged McRae as their attorney. Thereafter, McRae and Silver and Voit, P.A., filed a "motion to withdraw as counsel and to fix attorneys' liens." The trial court granted both McRae's and Silver and Voit's motions to withdraw. After several hearings on the motions to fix attorneys' liens, the court granted McRae a total lien of $10,000.00. This ruling was certified as final under Rule 54 (b), A.R.Civ.P.
The personal injury claim was subsequently settled, with attorneys Gary Porter and Joseph Brunson representing Peterson and Sawyer, respectively. Peterson was awarded $150,000.00 and Sawyer was awarded $250,000.00. McRae appeals from the lien judgments, seeking an attorney's fee lien amounting to 80% of the attorney's fee awarded to Porter and Brunson. Sawyer and Peterson cross-appeal, asserting that McRae should get no fee at all. *Page 1008 
Based on the assumption that he is entitled to an attorney's fee from Sawyer and Peterson for the work he performed on their cases, McRae would have this Court decide the proper method of fixing an attorney's fee lien when an attorney working under a contingent fee contract is discharged prior to the settlement of the case. The threshhold question which we must decide, however, is raised by Sawyer and Peterson on cross-appeal. The issue is whether an attorney who is not licensed to practice law in Alabama is thereby estopped from pursuing a claim for recovery of compensation on a contract with a client. We hold that McRae's failure to comply with the licensing statutes of this state renders his contracts with Sawyer and Peterson unenforceable. The trial court's judgments awarding liens to McRae in each case are therefore reversed.
Our court has never ruled that an attorney who is unlicensed in Alabama cannot enforce a contract entered into to provide legal services in this state. This Court has held, however, that members of other licensed occupations cannot enforce their contracts in regard to rendered services if they have not complied with Alabama licensing requirements.
In Hawkins v. League, 398 So.2d 232 (Ala. 1981), we ruled that an unlicensed general contractor could not recover the value of work performed for a land owner. The contractor had sued on a quantum meruit theory and was awarded a judgment of $10,000.00. He appealed, claiming that he was actually entitled to $27,724.75. We held that although the contractor proved his costs, he, nevertheless, could not recover.
 Finding that Hawkins was entitled to the full $27,724.75 claimed for performance under an oral contract, we run afoul of Code 1975, §§ 34-8-1 to -10, which require "general contractors" to be licensed. It is undisputed that neither League nor Hawkins had such a license. Although the statutes themselves provide a misdemeanor penalty for noncompliance, this Court has gone further, holding express or implied contracts with nonlicensed "general contractors" to be null and void as a violation of public policy. Cooper v. Johnston, 283 Ala. 565, 219 So.2d 392 (1969).
398 So.2d at 235. Thus, in Hawkins, not only did the unlicensed contractor not recover the $27,724.75 he wanted, but further, he lost the $10,000.00 he was originally awarded.
In deciding Hawkins, we relied on Cooper v. Johnston, supra, another general contractor licensing case. The plaintiff contractor in Cooper agreed to build a warehouse which cost in excess of $20,000.00, the amount for which a contractor was required by Alabama statute to have a license. The contractor sued to recover money owed him for the warehouse construction. The jury found for the unlicensed contractor, but the case was reversed on appeal. This Court first ascertained the purpose of the licensing statute as follows:
 We are convinced from a review of the original and amendatory acts that it was the intention of the legislature that said acts be enacted for regulation and protection as distinguished from a law created solely for revenue purposes. The primary purpose was to protect the public against incompetent contractors for certain-type structures, and also to better assure properly constructed structures which were free from defects and dangers to the public.
219 So.2d at 395. The Court then cited Knight v. Watson,221 Ala. 69, 127 So. 841 (1930), which held that contracts by unlicensed real estate brokers were illegal, void, and unenforceable, and Southern Metal Treating Co., Inc. v.Goodner, 271 Ala. 510, 125 So.2d 268 (1960), which held that an engineer not properly licensed in Alabama could not enforce "a contract to engineer." Cooper then concludes in this way:
 It is our opinion that Chapter 4, supra, regulating the licensing of general contractors is a police measure, expressing public policy and not merely for revenue *Page 1009 
purposes. We hold also that the contract between the parties to this suit, both express and implied, made the subject of this suit, is contrary to public policy determined by Chapter 4, supra, and that it is null and void.
219 So.2d at 396. Thus, the unlicensed contractor could not enforce the contract in issue in that case.
In Tucker v. Walker, 293 Ala. 589, 308 So.2d 245 (1975), the Court summarized the Cooper holding in this manner:
 This Court's holding in Cooper is based on the well-established rule that if the purpose of a licensing statute is the regulation of the business licensed and not merely the collection of revenue, a person not licensed cannot enforce a contract for services rendered within the scope of the regulated business. See Knight v. Watson, 221 Ala. 69, 127 So. 841 (1930); Southern Metal Treating Co., Inc. v. Goodner, 271 Ala. 510, 125 So.2d 268
(1960).
308 So.2d at 247. Under this analysis, if Alabama has an attorney licensing statute, the purpose of which is the regulation of the practice of law, then an unlicensed attorney should be estopped from enforcing a contract to provide legal services.
Chapter Three of Title 34 of the Code of Alabama 1975 regulates the practice of law in this state. It is evident that this statute serves as a police measure and not merely as a vehicle for raising revenue. Under the rationale of the above-cited cases, a lawyer unlicensed in Alabama cannot enforce a contract to provide legal services in this state. We can see no reason to treat the legal profession different from other licensed occupations in Alabama. Therefore, we hold that the court below erred as a matter of law in granting the liens to McRae. For this reason, the judgment below is reversed, and the cause remanded for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.