On Application for Rehearing
The opinion of December 23, 1998, is withdrawn, and the following is substituted therefor.
William C. Cunningham appeals from an order of the Sumter Circuit Court dismissing his action alleging breach of contract and negligence or wantonness against the law firm of Langston, Frazer, Sweet Freese, P.A. ("Langston Frazer"). Aside from arguing that the case should not have been dismissed, he argues that the case should not have been transferred from Jefferson County to Sumter County.
Cunningham's action stems from an alleged February 1993 fee-splitting arrangement between Cunningham and Langston Frazer, whereby they agreed to represent certain plaintiffs in an action against the Weyerhaeuser Company. According to Cunningham, the attorneys in that case would be paid one-half of the gross recovery, and that *Page 802 
one-half would then be split so that Cunningham and Langston Frazer would each receive 25% of the gross recovery. The case eventually became a class action, and, in May 1997, the trial judge awarded a $1 million attorney fee. Cunningham claims that Langston Frazer refused to honor its agreement and that, from the award Langston Frazer paid him only $10,000; he says that amount was paid by check on June 25, 1997. That same month, Cunningham sued Langston Frazer in the Jefferson Circuit Court, alleging breach of contract; negligence; wantonness; and negligent, willful, or wanton breach of the standard of care applicable to similarly situated attorney in the same area. Langston Frazer responded by filing both a motion to dismiss for failure to state a claim upon which relief could be granted and a motion to transfer the case to Sumter County. The judge of the Jefferson Circuit Court transferred the case to the Sumter Circuit Court, and the judge of the Sumter Circuit Court granted Langston Frazer's motion to dismiss. Cunningham appealed from the dismissal.
Concerning the applicable standard for reviewing motions to dismiss, this Court has stated:
 "`On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala.R.Civ.P.], is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'"
C.B. v. Bobo, 659 So.2d 98, 104 (Ala. 1995) (quoting Nance v.Matthews, 622 So.2d 297, 299 (Ala. 1993) (citations omitted)). However, Langston Frazel does not argue that Cunningham's complaint does not allege facts that could support his claims; rather, Langston Frazer contends that Cunningham's various claims relating to the alleged breach of contract must be brought under the Alabama Legal Services Liability Act, Ala. Code 1975, §§6-5-570 to 6-5-581 ("ALSLA"). Langston Frazer further argues that Cunningham's action was properly dismissed, arguing that it is barred by the ALSLA's two-year statute of limitations. Langston Frazer also contends that any fee-splitting contract between Cunningham and Langston Frazer would be unenforceable under Alabama law. Cunningham insists that his claims should be handled under regular contract and tort principles, arguing that the ALSLA does not apply to his lawsuit. Cunningham also claims that venue of his action was proper in Jefferson County and, therefore, that the case should not have been transferred to Sumter County. We reverse and remand.
 The Alabama Legal Services Liability Act
The Alabama Legal Services Liability Act, found in §§6-5-570 to 6-5-581 of the Alabama Code, provides that "[t]here shall be only one form and cause of action against legal service providers in courts in the, State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein." Ala. Code 1975, § 6-5-573. The term "legal service provider" is defined as:
 "Anyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. The term legal service provider includes professional corporations, associations, and partnerships and the members of such professional corporations, associations, and partnerships and the persons, firms, or corporations either employed by or performing work or services for the benefit of such professional corporations, associations, and partnerships including, without limitation, law clerks, legal assistants, legal secretaries, investigators, paralegals, and couriers."
Ala. Code 1975, § 6-5-572(2). Langston Frazer argues that, according to § 6-5-573, because it is a "legal service provider," the only type of action that can be brought against it is a "legal service liability action." *Page 803 
The term "legal service liability action" is defined as:
 "Any action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort; and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."
Ala. Code 1975, § 6-5-572(1). Because Cunningham did not, from the wording of his complaint, expressly sue under the ALSLA. Langston Frazer argues that the dismissal was proper. Setting aside the question of what level of specificity the ALSLA requires for a complaint filed pursuant to that Act, we address the broader issue raised: whether an claim against an entity that is a "legal service provider" — even a claim not related to that entity's activities in providing legal services — must be brought under the ALSLA. The answer is no.
The language of the ALSLA makes it clear that that Act refers to actions against "legal service providers" alleging breaches of their duties in providing legal services. Conversely, from a plaintiff's perspective, the ALSLA applies to any claim originating from his receipt of legal services. This is evident from several provisions throughout the Act, such as the section setting out the standard of care:
 "a. The standard of care applicable to a legal service provider is that level of such reasonable care, skill, and diligence as other similarly situated legal service providers in the same general line of practice in the same general locality ordinarily have and exercise in a like case.
 "b. However, if the legal service provider publishes the fact that he or she is certified as a specialist in an area of the law or if the legal service provider solicits business by publicly advertising as a specialist in an area of the law, the standard of care applicable to such legal service provider shall be such reasonable care, skill and diligence as other legal service providers practicing as a specialist in the same area of the law ordinarily have and exercise in a like case."
Ala. Code 1976, § 6-5-572(3)a. and b. (emphasis added); seealso Ala. Code 1975, § 6-5-580. The "in a like case" language qualifies the statement of the standard, both as to nonspecialist and specialist attorneys; that language clearly assumes that if this standard of care is to be breached, it will be breached in the handling of a "case" (i.e., a legal matter) by a "legal service provider." That the ALSLA refers to a lawyer's handling of legal matters is also made apparent by the definition of "underlying action":
 "The term underlying action refers to the legal matter concerning the handling of which it is alleged that the legal services provided breached the applicable standard of care. The term is applicable in legal service liability actions in which the legal service provider's liability is dependent in part upon or derived from the legal service provider's acts or omissions concerning the handling of the underlying action."
Ala. Code 1975, § 6-5-572(5) (emphasis added).
Of course, our purpose in examining a statute in this way is to determine legislative intent, which is normally determined most accurately from considering the words the legislature used in writing the statute. In the ALSLA, however, the legislature included an express statement of legislative intent:
 "It is hereby declared by the Legislature of the State of Alabama that a crisis threatens the delivery of legal service to the people of Alabama and that the quality of legal services which should be made available to the citizens of this state is in jeopardy. It is the declared intent of this legislature to insure that quality legal services continue to be available at reasonable costs to the citizens of the State of Alabama. This legislature finds and declares that the increasing threat of legal actions *Page 804 against legal service providers contributes to an increase in the cost of legal services and places a heavy burden upon those who can least afford such cost and that the threat of such legal actions contributes to the expense of providing legal services to be performed by legal service providers which otherwise would not be considered necessary, and that the spiraling costs and decreasing availability of essential legal services caused by the threat of such litigation constitute a danger to the welfare of the citizens of this state, and that this article should be given effect immediately to help control the spiraling cost of legal services and to insure the continued availability of vital legal services. . . . It is the intent of the legislature to establish a comprehensive system governing all legal actions against legal service providers. The legislature finds that in order to protect the rights and welfare of all Alabama citizens and in order to provide for the fair, orderly and efficient administration of legal actions against legal service providers in the courts of this state, this article provides a complete and unified approach to legal actions against legal service providers and creates a new and single form of action and cause of action exclusively governing the liability of legal service providers known as a legal service liability action and provides for the time in which a legal service liability action may be brought and maintained is required [sic]."
Ala. Code 1976, § 6-5-570.
It is apparent that to legislature was centrally concerned with the threat posed by "legal actions against Alabama legal service providers." The question is whether the legislature meant by that phrase any lawsuit against any attorney for whatever cause of action, or meant lawsuits alleging legal malpractice against attorneys for example, was the legislature responding to the threat of legal actions against attorneys in regard to such things as a law firm s contracting to have a drink machine placed in its office but then failing to pay in accordance with its contract; an attorney's involvement in a motor-vehicle accident or an attorney's dispute with his neighbor over a landline? These situations commonly give rise to lawsuits, but the disputes presented in those lawsuits would exist regardless of the one party's status as a "legal service provider" and would have no special relation to that status. It is clear from the language of the legislature's statement of intent that by enacting the LSLA the legislature was attempting to provide a unified approach to those "legal actions against legal service providers" that, if abused, could threaten "the delivery of legal service to the people of Alabama and . . . the quality of legal services which should be made available to the citizens of this state by forcing citizens to pay increased costs for legal services and decreasing the availability of those services. See Ala. Code 1975, § 6-5-570. Those "legal actions" the legislature was concerned about are, of course, actions against attorneys in their professional capacities; the legislature made this point evident in its statement of intent:
 "In addition, this legislature finds that legal service providers are experiencing great and increasing difficulties in obtaining professional liability insurance and that there is a great and rapid increase in the cost of professional liability insurance. This legislature finds that both the availability and the cost of professional liability insurance [are] in direct consequence to the threat of legal actions against Alabama legal service providers."
Ala. Code 1976, § 6-5-570 (emphasis added). Therefore, we conclude, from the language of the statute, that the ALSLA does not apply to an action filed against a "legal service provider" by someone whose claim does not arise out of the receipt of legal services.
Although this fact is not determinative, we note that this holding is consistent with prior Alabama caselaw. Every case decided by this Court or the Court of Civil Appeals that has concerned the ALSLA has presented a dispute where the plaintiff was receiving legal services. See, e.g., Ex parte Toler,710 So.2d 415 (Ala. 199 (3); Independent Stave Co. v. Bell,Richardson Sparkman, P.A., 678 So.2d 770 (Ala. 1996); ThirdGeneration, Inc. v. Wilson, 668 So.2d 518 (Ala. 1995); VoyagerGuar. Ins. Co. v. Brown, 631 So.2d 848 (Ala. 1993); Adams v.Erben, 681 So.2d 594 (Ala.Civ.App. 1996); Russell v. Burnham,Klinefelter, *Page 805 Halsey, Jones Cater, P.C., 674 So.2d 1285 (Ala.Civ.App.), rev'don other grounds, 674 So.2d 1287 (Ala. 1995). Also, as Cunningham points out in his brief, several cases regarding "legal service providers" that arose after the ALSLA was adopted have been decided without any mention of the ALSLA, and those cases involved facts similar to those presented in Cunningham's case.See Ex parte Counts, 683 So.2d 968, 969 (Ala. 1996) (stating that a fee-splitting dispute between attorneys would be "answered by basic contract law"); Vowell Meelheim, P.C. v. Beddow, ErbenBowen, P.A., 679 So.2d 637 (Ala. 1996) (resolving dispute over division of legal fees, without reference to the ALSLA); Gaines,Gaines, Gaines, P.C. v. Hare, Wynn, Newell Newton,554 So.2d 445 (Ala.Civ.App. 1989) (deciding question regarding enforcement of fee agreement, without reference to the ALSLA). Because the ALSLA applies only to lawsuits based on the relationship between legal service providers" and those who have received legal services, the provisions of that Act, including its statute of limitations, do not apply to Cunningham's claims against Langston Frazer.
 Statutes of Limitations
Cunningham argues that he had no cause of action against Langston Frazer until June 25, 1997, when Langston Frazer paid him the $10,000 (allegedly in violation of the fee agreement). Langston Frazer argues that if Cunningham has a cause of action against Langston Frazer, it must have accrued on May 3, 1993, when Cunningham received a letter from Langston Frazer that, according to Cunningham's complaint, attempted to change the terms of the fee arrangement. Under Langston Frazer's argrument, all of Cunningham's claims alleging negligence and wantonness would be barred by Ala. Code 1975, § 6-3-38(l), which provides that an action alleging negligence or wantonness must be brought within two years of the accrual of the cause of action.
However, these parties had the contract Cunningham says they had to split the attorney fee, then the duty upon Langston Frazer was to pay 25% of the gross award to Cunningham when (and if) money was awarded in the action against the Weyerhaeuser Company. Unless the May 3, 1993, letter can be considered an anticipatory repudiation, then the question whether Langston Frazer properly performed its duty must be decided as of the time when the money awarded came into the hands of Langston Frazer, which then either performed or breached. For a party's acts to constitute an anticipatory repudiation, the acts" must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation."' Draughon'sBusiness College v. Battles, 35 Ala. App. 587, 590, 50 So.2d 788,790 (1951) (quoting Mobley v. New York Life Ins. Co.,295 U.S. 632, 638, 55 S.Ct. 876, 79 L.Ed. 1621 (1935)).
The allegations of Cunningham's complaint would suggest that the May 3, 1993, letter was not an "unqualified refusal" to perform under the contract, but an attempt to modify it. Nothing in the allegations indicates that the letter was intended to state that Langston Frazer was refusing to perform a previous commitment. Thus, the letter would not be considered a repudiation, and Langston Frazer's duty to pay Cunningham 50% of the attorney fee, when awarded, would not at that: time have been breached. The breach occurred, then, assuming the existence of the contract, alleged by Cunningham, and the breach of that contract, when the time for performance arrived and Langston Frazer failed to performs we have stated, "[w]here the defendant has agreed under the contract to do a particular thing there is a breach and the right of action is complete upon his failure to dothe particular thing he agreed to do." Seybold v. Magnolia LandCo., 376 So.2d 1083, 1085 (Ala. 1979) (citing 17 Am.Jur.2dContracts § 441 (1964)) (emphasis added).
Taking Cunningham's allegations as true, we must conclude that Langston Frazer's duty to perform arose when the money was actually awarded in the Weyerhaeuser action and that the breach occurred in June 1997 when Langston Frazer paid Cunningham only. $10,000, which was less than 50% of the attorney fee. Therefore, all of Cunningham's claims were filed well within the applicable statutory limitations periods. See Ala. Code *Page 806 
1975, § 6-2-34(9) (six-year limitations period for a breach-of-contract claim); Ala. Code 1975, § 6-2-38(l) (two-year limitations period for a negligence or wantonness claim).
 Enforceability of the Alleged Contract
Langston Frazel maintains that even if such a fee-splitting contract did exist, the contract would not be enforceable because Cunningham is licensed as an attorney in Mississippi, not Alabama. McRae v. Sawyer, 473 So.2d 1006 (Ala. 1985). In McRae, we held that a "lawyer unlicensed [to practice law] in Alabama cannot enforce a contract to provide legal services in this state." McRae, 473 So.2d at 1009. However, in McRae the contract at issue was a contract between an out-of-state attorney and an in-state client to provide legal services. Here, the contract alleged by Cunningham was not a contract to provide legal services; rather, the alleged contract was an agreement between attorneys to split any fees that would be awarded. Unlike the situation in McRae, there was no agreement by Cunningham to provide legal services to Langston Frazer. Therefore, the alleged contract between Cunningham and Langston Frazer is not within the scope of the McRae holding and McRae would not make it unenforceable in Alabama.
 Venue
Cunningham also contends that it was error to transfer his action from Jefferson County to Sumter County because, he argues, the Jefferson Circuit Court had jurisdiction to decide it. Langston Frazer argues that the action was properly transferred because, it says: (1) the Sumter Circuit Court was the court in which the case producing the fee award (the case against the Weyerhaeuser Company) was heard; (2) the judge of the Sumter Circuit Court was familiar with the underlying issues in theWeyerhaeuser case; (3) the Sumter County trial judge was familiar with the attorneys involved in the Weyerhaeuser action and with the amount of work that each had performed; and (4) the Sumter Court trial judge had expressly retained jurisdiction over any matters arising from the Weyerhaeuser case.
In deciding .his v e issue, we note that this Court will reverse the venue determination of a trial court only upon a showing that "the trial court abused its discretion and exercised its judgment in an arbitrary and capricious manner." Ex parteHawkins, 497 So.2d 825, 828 (Ala. 1986) (citing Ex parte Wilson,408 So.2d 94 (Ala. 1981)).
Without considering the argument that the Sumter County trial judge had, in the Weyerhaeuser case, retained jurisdiction over the claims Cunningham presents in this action, we see no abuse of discretion on the part of the Jefferson circuit Court in granting Langston Frazer's motion to transfer. Even assuming that Cunningham was free to file his action in Jefferson County, that fact does not in itself make a transfer order "arbitrary and capricious." This Court has set out the standard a trial judge is to use when considering a request for a change of venue based on a defendant's claim that there is a more convenient forum:
 "The doctrine of forum non conveniens was formally adopted in this state and codified at § 6-3-21.1, Ala. Code 1975; the doctrine has a field of operation only where an action is commenced in a county in which venue is appropriate. Transfers under this Code section are within the discretion of the trial judge. The purpose of the doctrine is to prevent the waste of time, energy, and money and also to protect witnesses, litigants, and the public against unnecessary expense and inconvenience. Ex parte Townsend, 589 So.2d 711, 714 (Ala. 1991). Section 6-3-21.1 (a) reads as follows:
 "`(a) With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein.'
 "The burden of proof under this doctrine is on the defendant; to prove to the satisfaction of the trial court that the defendant's inconvenience and expense of defending the action in the venue selected by the plaintiff are such that the plaintiff's right to choose the forum is overcome. Stated differently, the transferee forum must be *Page 807 
significantly more convenient than the forum in which the action is filed by the plaintiff, to justify transfer. Ex parte Townsend, 589 So.2d at 714."
Ex parte New England Mt. Life Ins. Co., 663 So.2d 952, 956 (Ala. 1995); see also Ex parte Smith, 686 So.2d 245, 247 (Ala. 1996),Ex parte Integon Corp., 672 So.2d 497, 500 (Ala. 1995).
The Jefferson County trial judge certainly could have been persuaded by Langston Frazer's assertions, which are outlined above and which were included in its motion to transfer, that Sumter County was a "significantly more convenient" forum and that the "interest of justice" or the "convenience of parties and witnesses" would be best served by transferring the case. Nothing before us suggests either that the transfer decision was made in an "arbitrary and capricious" manner or that the Sumter circuit Court did not have jurisdiction to hear the case. Therefore, we cannot hold that the Jefferson County trial judge abused his discretion in transferring the case to Sumter County.
OPINION OF DECEMBER 23, 1998, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED; APPLICATION FOR REHEARING OVERRULED.
HOOPER, C.J., and MADDOX, KENNEDY, COOK, SEE, LYONS, and BROWN, JJ., concur.