On April 17, 1984, Lawrence Kenny Averette ("Kenny") was killed in a motorcycle accident. He left a daughter, April Averette ("April"), who was four years old at that time, and a wife, then known as Janet Diane Averette ("Diane"). At the time of his death, Kenny and Diane were in the process of obtaining a divorce; however, no divorce judgment had been entered as of the date of his death.
Kenny's mother, Irene Averette ("Irene"), filed a petition for letters of administration on the estate of her deceased son. Diane, the surviving spouse, filed a similar petition subsequent to Irene's filing. Diane's attorney entered into negotiations with Irene concerning the distribution of any proceeds resulting from litigation arising out of Kenny's death. Before these negotiations were concluded, Diane changed attorneys; Dan M. Gibson, a Tuscaloosa attorney, began representing her. Gibson revised the draft of the agreement resulting from the negotiations and submitted it to Irene. Irene and Diane signed the agreement on December 10, 1984, pursuant to which Irene agreed to dismiss her petition for letters of administration — thus clearing the way for Diane to be appointed administratrix of Kenny's estate — in exchange for Diane's agreement that "all sums recovered as a result of any litigation or settlement of [a wrongful-death action filed as a result of Kenny's death], less and except reasonable expenses, shall be placed in a trust for the use and benefit of April Michelle Averette."
Diane, in her capacity as the administratrix of Kenny's estate, filed a wrongful-death action against the driver and owner of the truck involved in Kenny's accident and against Allstate Insurance Company, which insured the truck. On January 13, 1987, the wrongful-death action was settled. According to the settlement agreement, Allstate agreed to pay an initial lump sum of $125,000 and agreed to make structured payments until December 1, 2012. After the wrongful-death action was settled, Gibson met with Diane, Diane's new husband, and a trust officer at the First National Bank of Tuskaloosa, and established a trust for April's benefit. According to Gibson's interpretation of the agreement between Diane and Irene, Diane's status as a surviving spouse meant that she would receive any proceeds that *Page 758 
were payable to her personally, but that she had agreed to transfer those proceeds to the trust. Diane made an initial deposit of $50,000 into the trust, but made no other deposits.
Differences arose between April and Diane in October 1997; April was approximately 18 years old. April moved out of her mother's house and moved in with her grandmother, Irene. April and Irene maintain that they never learned of the settlement of the wrongful-death action until December 18, 1997. Around September 1, 1998, April and Irene discovered that Diane had failed to honor her agreement with Irene and that she had not deposited into the trust the balance of the initial payment, after attorney fees and expenses had been deducted, or any subsequently received structured-settlement proceeds payable to her in her individual capacity. Irene contacted Gibson, who referred her to the First National Bank of Tuskaloosa.
April and Irene retained an attorney, Mark D. Morrow, in an effort to recover the missing settlement proceeds. Morrow had worked as an associate in Gibson's law firm from 1989 through 1991, leaving in April 1991. Morrow wrote Gibson on April 8, 1999, inquiring about the missing settlement proceeds. In the letter, Morrow maintained that the agreement between Irene and Diane required that Diane formally disclaim any interest in the estate of her deceased husband, which she had not done. Gibson responded by disagreeing with Morrow's contention that the agreement required Diane to disclaim any interest in the recovery in the wrongful-death action. Gibson considered his responsibility discharged by the creation of the trust for April and Diane's agreement with Irene to deposit into the trust future structured payments payable to her in her individual capacity.
Several months later, Morrow, without requesting an accounting or consulting another attorney, filed an action on behalf of April and Irene against Gibson, Diane, and Allstate Insurance Company, which was responsible for making the settlement payments. Soon after that action was filed, Morrow contacted The Tuscaloosa News and informed it that a complaint had been filed against Gibson that it might find newsworthy.
Gibson moved for dismissal of the action against him, arguing that it is barred by the statute of limitations under the Alabama Legal Services Liability Act (§§ 6-5-570 et seq., Ala. Code 1975) ("ALSLA"). April and Irene responded by contending that their claim did not fall under the ALSLA and that it was therefore not time-barred. The trial court granted the motion to dismiss, April and Irene appealed, and this Court affirmed, without an opinion. See Averette v. Fields, (No. 1992171, May 18, 2001) 824 So.2d 85 (Ala. 2001) (table) ("Averette I").
Very shortly after the trial court's dismissal, Gibson filed a motion for relief pursuant to the Alabama Litigation Accountability Act (§§12-19-270 et seq., Ala. Code 1975) ("the ALAA"). The trial court conducted a hearing on Gibson's motion while the appeal was pending inAverette I. After this Court affirmed the dismissal, the trial court entered a judgment for Gibson in the amount of $7,000 against Morrow. Morrow appealed the trial court's judgment against him.
In his brief to this Court, Morrow describes the case as follows:
 "This is the case of two attorneys, one, who's [sic] greed led him to allegedly lie to an elderly lady regarding his plans to protect her granddaughter's claim to proceed's [sic] from the young girl's father's wrongful death case in order to collect a contingency fee and, thereafter, *Page 759 
 to hide behind a short statute of limitations when it was discovered that his actions conspired to allow the young girl to be stolen from. The other, an attorney, who diligently trying to right a wrong and prevent further injustice, has $7,000.00 in sanctions imposed against him for agreeing to assist the young girl and her grandmother to file a claim when the former [presumably, the first attorney] refused to admit to his culpability. This is the case of two attorneys, only the latter of which deserves this Court's favor."
The trial court entered an order just over three pages in length. The first page recites the underlying facts and makes a finding that Diane (referred to as "Janet" in the order) received the settlement proceeds and squandered them rather than putting them in trust for April. The trial court then notes that April and Irene filed their lawsuit over 12 years after the act or omission made the basis of the action had occurred, and further notes that this Court affirmed without an opinion the dismissal of the claims against Gibson based upon the two-year statute of limitations.
The next two pages of the trial court's order consist almost entirely of a discussion of the factors set forth in § 12-19-273 that a court should consider in granting or denying attorney fees. Set forth below are the applicable portions of the statute and the trial court's finding with respect to each portion.
§ 12-19-273(1):
 "The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted."
Trial court's order:
 "The plaintiff's attorney spent a substantial amount of time researching the facts alleged. It was the plaintiff's theory, that since the plaintiff Irene Averette was not a client of the defendant attorney, the [ALSLA] did not apply, and the statute of limitations for regular fraud actions, i.e. when the fraud was discovered would apply. The plaintiff's attorney was simply legally incorrect."
§ 12-19-273(2):
 "The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid."
Trial court's order:
 "The plaintiff's attorney stubbornly hung on to all claims, pursuing them to the Supreme Court."
§ 12-19-273(3):
 "The availability of facts to assist in determining the validity of an action, claim or defense."
Trial court's order:
 "It should have been very apparent to the plaintiff's attorney that, since the defendant was being sued in his capacity as an attorney, [the ALSLA] would control, and suit would have to have been filed within 2 years of the act or omission."
§ 2-19-273(4):
"The relative financial position of the parties involved."
Trial court's order:
"No evidence was presented on this issue."
§ 12-19-273(5):
 "Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose."
Trial court's order:
 "There was evidence that [Morrow] had rented office space in [Gibson's] office at one time, and apparently there were *Page 760 
 hard feelings between the 2 attorneys at the time [Morrow] relocated his practice."
§ 12-19-273(6):
 "Whether or not issues of fact, determinative of the validity of a parties' claim or defense, were reasonably in conflict."
Trial court's order:
 "The underlying facts were in conflict[;] however, the statute of limitations issue was not in conflict."
§ 12-19-273(7):
 "The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy."
Trial court's order:
 "The trial court's order, dismissing the claims, has been affirmed on appeal by the Alabama Supreme Court."
§ 12-19-273(8):
 "The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing."
Trial court's order:
 "[Morrow] was apparently trying to establish novel theories, that if a lawyer is sued for fraud, the 2-year statute of limitations does not apply in [an ALSLA] action, and that a lawyer owes a legal duty to a non-client."
§ 12-19-273(9):
 "The amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court."
Trial court's order:
"This factor is not applicable."
§ 12-19-273(10):
 "The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action"
Trial court's order:
 "There was no evidence presented from which this court could conclude that an effort was made to determine the proper legal duties of defendant Dan Gibson."
§ 12-19-273(11):
 "The extent of any effort made after the commencement of an action to reduce the number of parties in the action."
Trial court's order:
 "There was no effort made to reduce the number of parties."
§ 12-19-273(12):
 "The period of time available to the attorney for the party asserting any defense before such defense was interposed."
Trial court's order:
"This factor is not applicable."
The trial court then concluded:
 "Attorney, Dan Gibson, has incurred seven thousand dollars in defending this action. The claim against Dan Gibson was frivolous, because the statute of limitations had expired. Plaintiffs April Averette and Irene Averette simply relied on their attorney's advice in pursuing the claims. Plaintiff's [sic] attorney Mark Morrow should have known that the 2-year statute of limitations would preclude the claims, yet he kept pursuing the claims. This court, therefore, awards to defendant Dan Gibson seven thousand dollars in attorney fees to be paid by attorney Mark Morrow, and judgment is rendered accordingly against Mark Morrow." *Page 761 
Section 12-19-272(a) provides that a trial court shall award an attorney fee against an attorney who has brought a civil action "that a court determines to be without substantial justification, either in whole or part." Morrow argues that the trial court erred to reversal by failing to make an express finding that he acted "without substantial justification." Gibson acknowledges that the trial court's order contains no such language.
In Pacific Enterprises Oil Co. (USA) v. Howell Petroleum Corp.,614 So.2d 409 (Ala. 1993), this Court reversed an award of attorney fees under the ALAA on the ground that the underlying action had been filed "without substantial justification," but without stating the specific reasons for such finding. The trial court's order in Pacific Enterprises
read as follows:
 "`The Court and parties had to go through a trial of this case because [Terra], in connection with its Rule 60(b) motion, represented that it had new matters of a material nature that should have been presented at the hearing on summary judgment, but were not. Based upon these representations, the case was reopened, and trial required. The Court noted at trial that none of the "new matter" promised in [Terra's] Rule 60(b) motion had been presented. The Court now finds and concludes, after [a] hearing on the attorney fees issues, that no material new matters were presented by [Terra] at the trial; and that trial was required on defenses and a counterclaim which were without substantial justification within the meaning of the [Litigation] Accountability Act. Thus, [Howell] is entitled to an award of attorney fees under the Accountability Act.'"
614 So.2d at 415-16 (emphasis added).
This Court concluded in Pacific Enterprises that the trial court's order was deficient because "we cannot determine upon what basis, or upon what legal or evidentiary points, the trial court based its determination that Terra's asserted Rule 60(b) `new matters' were `without substantial justification.'" Id. at 418-19.
Contrary to the position urged by Morrow, Pacific Enterprises cannot be cited for the proposition that the phrase "without substantial justification" is talismanic, because the order this Court found defective in Pacific Enterprises contained that phraseology. PacificEnterprises does stand for the proposition that the trial court must give a basis for its ruling. On other occasions, orders allowing sanctions imposed under the ALAA have been upheld, notwithstanding a failure to use the phrase "without substantial justification." See Cauthen v. Yates,716 So.2d 1256 (Ala.Civ.App. 1998), and Hall v. American Indem. Group,681 So.2d 220 (Ala.Civ.App. 1996).
Section 12-19-271(1) requires that for an action, claim, or defense to be "without substantial justification," it must be either "frivolous," "groundless in fact or in law," "vexatious," or "interposed for any improper purpose." In Pacific Enterprises, this Court held "that the terms or phrases `frivolous,' `groundless in fact,' `vexatious,' and `interposed for any improper purpose' require factual determinations that will be entitled to deference on appeal." 614 So.2d at 418. The string of words used to define "without substantial justification" in §12-19-271(1) is presented in the alternative. The very first word used is "frivolous." The trial court described Morrow's claim asserted on behalf of April and Irene as "frivolous, because the statute of limitations had expired."
The trial court's failure to use the phrase "without substantial justification" is, therefore, not in and of itself error. *Page 762 
Furthermore, by making findings as to each applicable factor and assigning a basis for its conclusion, followed by a specific reason (Morrow should have known that the two-year statute of limitations would preclude the claims), the trial court has furnished this Court ample information upon which to review its order.
Our standard of review depends upon the basis for the trial court's determination. "[I]f a trial court determines that a party's action, claim, or defense is `without substantial justification,' based on the applicability of any one of [the aforementioned terms or phrases in §12-19-271(1)], that determination will not be disturbed on appeal `unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.'" Pacific Enterprises, 614 So.2d at 418. However, the phrase "groundless in law" clearly calls for a legal determination. Therefore, if the trial court determines that a party's action, claim, or defense is "without substantial justification" because it is "groundless in law," that determination will not be entitled to a presumption of correctness. Id.
Gibson argues that the trial court's determination that the claim was frivolous is a factual determination that cannot be overturned on appeal unless it is found to be clearly erroneous. Morrow contends, on the other hand, that while certain facts were in dispute, the trial court determined the correctness of his legal position without allowing discovery. Gibson contends that the failure to conduct discovery was not the result of any order of the trial court, but rather was the result of inactivity on Morrow's part. Nevertheless, because the trial court specifically identified Morrow's miscalculation as to the applicable statute of limitations as the sole basis for the imposition of sanctions, our standard of review is the same as if the trial court had found that Morrow's position was "groundless in law," notwithstanding the trial court's description of the action as "frivolous." We therefore review the order without any presumption of correctness.
"This court takes judicial notice or has judicial knowledge of contents of its records with reference to its previous consideration of litigation presently before it." Federal Deposit Ins. Corp. v. Equitable Life Assur.Soc. of the United States, 289 Ala. 192, 194, 266 So.2d 752, 753 (1972). A review of the briefs from the earlier appeal in Averette I reflects that Gibson successfully argued that the complaint drafted by Morrow against Gibson contained averments clearly consistent with placing in issue the legal services rendered by Gibson. For example, the complaint referred to Gibson's status as an attorney for Kenny's estate and alleged that Gibson owed the heirs of the estate a professional and fiduciary duty.
Morrow relied upon Cunningham v. Langston, Frazer, Sweet Freese,P.A., 727 So.2d 800, 804 (Ala. 1999), where this Court concluded, "from the language of the statute, that the ALSLA does not apply to an action filed against a `legal service provider' by someone whose claim does not arise out of the receipt of legal services." This Court supported the holding with the following observation:
 "Although this fact is not determinative, we note that this holding is consistent with prior Alabama caselaw. Every case decided by this Court or the Court of Civil Appeals that has concerned the ALSLA has presented a dispute where the plaintiff was receiving legal services. See, e.g., Ex parte Toler, 710 So.2d 415
(Ala. 1998); Independent Stave Co. v. Bell, Richardson Sparkman, P.A., 678 So.2d 770 (Ala. 1996); Third Generation, *Page 763 
 Inc. v. Wilson, 668 So.2d 518 (Ala. 1995); Voyager Guar. Ins. Co. v. Brown, 631 So.2d 848 (Ala. 1993); Adams v. Erben, 681 So.2d 594 (Ala.Civ.App. 1996); Russell v. Burnham, Klinefelter, Halsey, Jones Cater, P.C., 674 So.2d 1285 (Ala.Civ.App.), rev'd on other grounds, 674 So.2d 1287 (Ala. 1995)."
727 So.2d at 804-05 (emphasis added). In all of the cases cited inCunningham, except Voyager, the plaintiff had been a client of the defendant attorney. In Voyager, the plaintiff was a lender relying on a legal opinion given by the defendant attorney.
Under the allegations of Morrow's complaint, April and Irene, who were undisputedly not Gibson's clients, were not the recipients of his legal services, but actions he allegedly took while providing legal services for a third party profoundly affected them. Morrow urged the trial court to apply that part of Cunningham holding that "[b]ecause the ALSLA applies only to lawsuits based on the relationship between `legal service providers' and those who have received legal services, the provisions of that Act, including its statute of limitations, do not apply to Cunningham's claims against Langston Frazer." 727 So.2d at 805. Gibson's brief in Averette I urged this Court to follow the Legislature's explicit statement of applicability of the ALSLA to "[a]ny action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider." §6-5-572(1). This Court, in its no-opinion affirmance in Averette, upheld the trial court's rejection of the basis argued by Morrow as one upon which to distinguish Cunningham.
The trial court's determination in this case is, as previously noted, the equivalent of a finding that the action was "groundless in law," and we review it without a presumption of correctness. To uphold the trial court's determination, we must take care not to run contrary to our conclusion in Pacific Enterprises as to the intent of the Legislature. In that case, this Court stated:
 "Also, we conclude that the legislature had no intention to chill attorney creativity in making good faith arguments for changes in the law. Trial courts should be exceedingly careful in making a `without substantial justification' finding, so as not to discourage attorneys from creatively arguing for change in the law based on rational, good faith argument."
614 So.2d at 418.
The trial court rejected Morrow's theory that "since [Irene] was not a client of [Gibson's], the [ALSLA] did not apply, and the statute of limitations for regular fraud actions, i.e., when the fraud was discovered would apply." The trial court concluded that Morrow "was simply legally incorrect." The court also acknowledged that Morrow "was apparently trying to establish novel theories, that if a lawyer is sued for fraud, the 2-year statute of limitations does not apply in [an ALSLA] action, and that a lawyer owes a legal duty to a non-client." No case before this action has specifically dealt with the question whether an action filed against an attorney by a nonclient and arising out of that attorney's rendition of legal services to a third party was subject to the ALSLA. Moreover, language in Cunningham can reasonably be read to suggest the view that the ALSLA applies only to proceedings commenced against the legal-service provider by one who had received legal services, that is, one to whom legal services had been rendered. Morrow must have been more than "simply legally incorrect" *Page 764 
to justify an award of attorney fees pursuant to the ALAA. The legal insufficiency of his position must be susceptible to a conclusion that no reasonable and competent attorney would have advanced the contention that he did. In view of the previously noted language in Cunningham and the absence of direct precedent, we cannot so characterize Morrow's conduct. Under these circumstances, upholding an award of attorney fees pursuant to the ALSLA in this case impermissibly crosses the line between discouraging groundless lawsuits and chilling attorney creativity in making good-faith arguments. The award of attorney fees is therefore due to be reversed.
We reverse the judgment entered against Morrow and remand the case for the trial court to vacate its attorney-fee award.
REVERSED AND REMANDED.
See, Brown, Johnstone, Woodall, and Stuart, JJ., concur.
Houston, J., concurs specially.