MURDOCK, Justice
(concurring in the result).
A.
The main opinion proceeds on the premise that some of Dr. Delane O’Rear’s acts against B.H. are governed by the pleading and proof requirements of the Alabama Medical Liability Act, Ala.Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq. (“AMLA”). Assuming for the sake of this part of my writing that this premise is correct, I note that the rules of medical ethics that may be derived from the Hippocratic Oath or from rules promulgated by the American Medical Association — although they might provide a basis for sanctions by a licensing authority — are not necessarily rules that, if violated, give a patient a viable cause of action under Alabama law for medical malpractice. The existence of a cause of action for medical malpractice and the elements thereof — and the defenses thereto — ultimately are a function of state law. The standard of care that must be proven as part of those elements may be influenced by ethical rules found in the Hippocratic Oath or in rules published by a medical society or association, but the latter are not ipso facto descriptive of the standard of care actionable in a state-law claim for money damages by an allegedly wronged individual. Likewise, in a given case, it is conceivable that certain conduct may not support a claim for money damages against a doctor because the “victim” was an adult who knowingly and voluntarily participated in the conduct.[5]
*122 As to the requirement of establishing the applicable standard of care under Alabama law, the majority of the Court would satisfy this requirement in the present case by analyzing the issue as one arising under the AMLA. More specifically in this regard, the majority finds that the applicable standard of care was established by expert testimony from Dr. O’Rear to the effect that certain standards set out in the Hippocratic Oath and in the rules established by the American Medical Association did describe the standard of care applicable to his care and treatment of B.H. 69 So.3d at 116.
It should be further noted, however, that, although the AMLA generally requires expert testimony in order to establish the applicable standard of care, “[a]n exception to the general rule requiring expert testimony in medical malpractice suits obtains in cases where the want of skill or lack of care is so apparent as to be within the comprehension of the average layman and thus requires only common knowledge and experience to understand it.” Bradford v. McGee, 534 So.2d 1076, 1080 (Ala.1988). If some of Dr. O’Rear’s actions are, as the majority holds, actionable under, and only under, the AMLA, I would not think it necessary to employ expert testimony in order to establish the wrongfulness of those actions. It is beyond peradventure, in my view, that “only common knowledge and experience” are necessary to understand the wrongfulness of Dr. O’Rear’s conduct in this case.
B.
All of that being said, I must back up and explain that I cannot agree that any of Dr. O’Rear’s actions are governed by the pleading and proof requirements of the AMLA. Although some of Dr. O’Rear’s acts might have occurred during the same time frame within which he was providing some medical care to B.H., and although some of Dr. O’Rear’s acts may have occurred in the same location where Dr. O’Rear provides medical care to patients, Dr. O’Rear’s acts in exchanging controlled substances for the performance of homosexual acts were not part of providing medical care to B.H. so as to be governed by the AMLA. The dissenting opinion of Justice Lyons in Mock v. Allen, 783 So.2d 828, 835 (Ala.2000) (Lyons, J., dissenting, joined by England, J.), adopts by reference the views of Justice See in an earlier writing in that same case. As did Justice Lyons in Mock, I find Justice See’s writing to be more than adequate to explain what I believe is the correct view of circumstances like those presented here. Justice Lyons introduced Justice See’s writing as follows:
“I respectfully dissent. On June 30, 2000, when this Court released its original opinion,[6] I dissented and Justice England and I joined a dissent written by Justice See. On this application for rehearing, Justice See has recused himself. The majority today withdraws the opinion released on June 30 and substitutes a different opinion; Justice See’s dissent is not included with the opinion released today. I adhere to the views Justice See expressed in the dissent he issued on June 30, 2000; rather than attempt to restate those views, I attach a copy of Justice See’s June 30, 2000, dissent as an appendix to this special writing.”
Mock, 783 So.2d at 835 (Lyons, J., dissenting).
*123 As set out in the appendix to Justice Lyons’s writing, Justice See wrote, in pertinent part, in his dissent from the original opinion in Mock:
“ ‘The dispositive issue is whether- the Alabama Medical Liability Act of 1987, Ala.Code 1975, § 6-5-540 et seq. (the “AMLA”), applies to this action against a physician. The plaintiff alleges that the defendant, Dr. Robert Allen, improperly “fondled, stroked, caressed or otherwise touched” the plaintiffs genitals during medical examinations. Dr. Allen testified that there was no medical reason for him to engage in the conduct of which he is accused. As to one of the alleged incidents, Dr. Allen testified that he did not remember whether he touched the plaintiffs genitals, but that if he did it was medically appropriate. As to all the other alleged incidents, Dr. Allen stated that there was no medical reason for him to stroke the plaintiffs genitals and that he did not do so.
[[Image here]]
“ ‘The Legislature declared that it enacted the AMLA in response to increasing health-care costs caused by “the increasing threat of legal actions for alleged medical injury.” Ala.Code 1975, § 6-5-540. The AMLA applies to actions against a health-care provider alleging a “breach of the standard of care.” Ala.Code 1975, § 6-5-540 et seq. A breach of the standard of care is the “fail[ure] to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.” § 6-5-548. Thus, the AMLA applies to conduct that is, or that is reasonably related to, the provision of health-care services allegedly resulting in a medical injury. Just as the Alabama Legal Services Liability Act does not apply to every action against a person who is a lawyer, see Cunningham v. Langston, Frazer, Sweet & Freese, P.A., 727 So.2d 800 (Ala.1999), the AMLA does not apply to every action against a person who is a doctor, see Thomasson v. Diethelm, 457 So.2d 397 (Ala.1984). It does not, I believe, apply to an action alleging sexual molestation, where the health-care provider concedes that the acts complained of were not medically relevant. Although Mock’s claims arise out of conduct that took place at a time when there was a doctor-patient relationship for the purpose of examination and treatment, see Thomasson, that fact alone cannot subject to the provisions of the AMLA all conduct by the doctor, however unrelated to the provision of medical services. Mock alleges that Dr. Allen, during otherwise legitimate medical examinations, did something that Dr. Allen concedes would have been outside the scope of legitimate medical treatment.[4] At trial, Dr. Allen testified that, with one possible exception, he had no reason to, and did not, examine Mock’s genitals.
“ ‘The majority concludes that the AMLA applies to Mock’s claims against Dr. Allen. As to the alleged incident that Dr. Allen testified might have involved a medically appropriate examination of Mock’s genitals, I agree. However, as to the other alleged incidents, I disagree. Dr. Allen testified that, as to those alleged incidents, there was no medical reason for him to touch Mock’s genitals, and he has flatly denied doing so. Dr. Allen should not be able to avail himself of the protections of the AMLA with respect to these alleged incidents, which by Dr. Allen’s own admission do not involve an alleged breach of the standard of care to be followed in rendering medical treatment.
*124 [[Image here]]
“ ‘. Because of the implications of the majority’s affirmance — an affir-mance based on the conclusion that the AMLA applies to a claim against a physician even if the allegation of liability is based on an act or omission that is not even arguably a part of the physician’s provision of health-care services,[5] I believe the trial court’s judgment should be reversed and the case remanded.
[[Image here]]
783 So.2d at 885-38 (emphasis added).
C.
I conclude that the claims of assault and battery brought by B.H. against Dr. O’Rear are viable and were supported by substantial evidence. I also agree that a claim asserting the tort of outrage is viable under the circumstances presented here. See American Road Serv. Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980) (referring to conduct “so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement, [ (Second) of Torts, § 46] at 72 [ (1965) ].”). I therefore concur in the result reached by the main opinion.[7]

. Obviously, a physician’s engaging with another in the type of drug activity and sexual conduct described in this case subjects the physician to the revocation of his or her medical license and/or other sanctions imposed by the State. As for the availability of a private cause of action for money damages under any of the legal theories discussed in the main opinion, however, I note that we are not dealing here with a case in which the plaintiff’s engagement in such activities was knowing and voluntary in the eyes of the law. B.H. was an adolescent when Dr. O’Rear led him into the pattern of conduct at issue. Consistent with the sentiments expressed in Part III of the main opinion, the Court does not treat as voluntary or consensual B.H.’s "purchase” of drugs from Dr. O’Rear or the sexual activity into which Dr. O’Rear led *122 B.H., at least under the particular facts of this case.

. The Court’s June 30, 2000, opinion in Mock was withdrawn and a new one substituted on November 17, 2000.

"4 ‘Dr. Allen testified in his deposition that "there was no medical or neurological reason that I would have needed to fondle, stroke, or caress Mr. Mock’s genitals during the period of time that I saw him from November 19 through December 10, 1991.” He further testified, "There are situations under which a physician may need to stroke, in a medical sense, not in a sexual sense, stroke a person's genitals for purpose of other examination; within the context of my dealing with Mr. Mock, there is no reason that I am aware of that I would have needed to have stroked his genitals, and I did not do that.”

"5 ‘Under the principle implicit in the majority’s decision, were a doctor to shoot a patient, the AMLA -would apply if that shooting took place during a medical examination.' "

. We are not presented in this case with an argument that B.H.’s claims against Dr. O’Rear are to any extent barred by a statute of limitations or that B.H. was of sufficient age to have consented to Dr. O'Rear’s actions or to have voluntarily engaged in the activities at issue.