Allen E. Shealy appeals the judgment of the St. Clair Circuit Court entered in favor of the defendants, Jimmy Golden and Wolf Creek Timber Company (hereinafter collectively referred to as "Golden").
This case involves Shealy's right to redeem as to three tracts of land that were foreclosed upon.
The home tract, located on the southwest side of Wolf Creek Road, consisted of *Page 270 
a house (which has since burned) and approximately five acres of land. The pasture tract was situated approximately one-half mile northeast of the home tract on the north side of Wolf Creek Road and consisted of 107 acres of unimproved pasture land. The 125-acre subdivision tract was also approximately one-half mile northeast of the home tract, but on the south side of Wolf Creek Road.
For over 25 years, William Carleton and Mary Gail Carleton lived on the home tract. In 1997, the Carletons purchased the pasture tract. To secure the financing for this purchase, the Carletons gave a mortgage to Union State Bank ("the first USB mortgage"). The first USB mortgage covered not only the pasture tract but also the home tract.[1] Later in 1997, the Carletons purchased the subdivision tract, also securing financing for this purchase through a mortgage on the tract given to Union State Bank ("the second USB mortgage"). The second USB mortgage covered only the subdivision tract. Union State Bank subsequently combined the two loans and had the Carletons execute a single promissory note, secured by both the first USB mortgage and the second USB mortgage.
In early 2002, the Carletons were separated and were involved in divorce proceedings. The Carletons defaulted on their note to Union State Bank and the bank subsequently foreclosed upon all three tracts of land. On February 4, 2002, the home tract and the pasture tract, securing the first USB mortgage, were sold in one foreclosure sale and the subdivision tract, securing the second USB mortgage, was sold at a foreclosure sale later that same day. At each sale, Union State Bank bid and purchased the tracts — $286,467.28 to purchase the home and pasture tracts, $191,370.96 to purchase the subdivision tract.
On February 27, 2002, Union State Bank sold all three tracts to Golden, conveying title to the home and pasture tracts by one deed and title to the subdivision tract by a second deed. Union State Bank also transferred the unpaid balance of the debt to Golden. Mr. Carleton remained in the house situated on the home tract, paying the NBC mortgage and the homeowner's insurance on the house.
On March 15, 2002, Golden sent Carleton a letter demanding that he deliver possession of the "real property" within 10 days of the date of the letter. Carleton remained on the home tract. On May 3, 2002, Golden filed an action in the St. Clair District Court seeking to evict Carleton from the home tract. Carleton moved out of the house on the home tract over a three-day period, from May 21 to May 23. However, two to three weeks later, Carleton moved back into the house.
Throughout the next several months, Carleton remained in the house on the home tract. He continued to pay the monthly NBC mortgage payments on the home tract and the insurance premiums on the house located on the home tract.[2]
On January 11, 2003, Carleton made a written demand of Golden for a statement in writing of the debt and all lawful charges claimed by him. Golden received the demand on January 14, 2003, and his statement of the debt and charges was dated January 27, 2003, 13 calendar days after demand was made. Golden personally *Page 271 
placed the statement in Carleton's mailbox, but not until January 27 at the earliest.
On February 3, 2003, Carleton filed this action in the St. Clair Circuit Court seeking to redeem all three tracts. On February 20, 2003, Shealy filed a motion to intervene, stating that he had purchased from Carleton the right to redeem the property and that he was the proper party in interest to the action. To support his contentions, Shealy produced a document styled "Transfer and Assignment of Right of Redemption," which was executed by Carleton and Shealy; their signatures were witnessed on "the ___ day of February[,] 2003." Although we cannot conclude when the transfer and assignment of Carleton's right to redeem occurred, Shealy and Golden stipulated that Shealy was the proper party in interest and that Carleton had transferred and assigned whatever interest he had in the three tracts as of February 3, 2003, to Shealy.
After a bench trial, the circuit court entered an order stating that "the threshold issue in these cases is whether [Shealy, as Carleton's assignee] has forfeited the right to redeem the realproperty which is the subject of this litigation" (emphasis added). The court emphasized that upon receiving testimony from each side, it was "unable to reasonably reconcile the testimony of all the witnesses . . . and it became necessary to weigh the testimony. . . . In so doing, the Court has found it necessary to reject part of the testimony." The Court found that Shealy "did, in fact, forfeit his statutory right to redeem by [Carleton's] failing to vacate the real property described in themortgages which secured the note" (emphasis added). Consequently, the trial court entered a judgment in favor of Golden. Shealy appeals.
 Standard of Review
Under the ore tenus rule, the trial court's findings of fact are presumed correct and will not be disturbed upon appeal unless these findings are "plainly or palpably wrong or against the preponderance of the evidence." Ex parte Cater, 772 So.2d 1117,1119 (Ala. 2000). However, "[t]he ore tenus rule does not extend to cloak a trial judge's conclusions of law . . . with a presumption of correctness." Eubanks v. Hale, 752 So.2d 1113,1144-45 (Ala. 1999). Thus, the court's legal conclusions are subject to de novo review.
 I.
We must first determine whether Carleton forfeited the right to redeem the home tract. If so, he had no right to redemption to transfer to Shealy. In its judgment, the trial court found that Carleton had forfeited his right because he "fail[ed] to vacatethe real property." (Emphasis added.) This section will confine its discussion to whether Carleton failed to vacate the home tract.
Ala. Code 1975, § 6-5-251, provides:
 "(a) The possession of the land must be delivered to the purchaser or purchaser's transferees by the . . . mortgagor if in [his] possession . . . within 10 days after written demand for the possession has been made by, or on behalf of, the purchaser or the purchaser's transferees.
". . . .
 "(c) Failure of the . . . mortgagor . . . to comply with the provisions of this section forfeits the right of redemption. . . ."
Golden demanded that Carleton deliver the property to Golden on March 15, 2002. Carleton did not vacate the home tract. Golden filed an eviction action on May 3, 2002; on May 5, Carleton received notice *Page 272 
that an eviction action had been filed. Even then, Carleton did not begin to leave the house on the home tract for another 16 days.
Carleton's explanation for his initial failure to vacate is that he and Golden had reached an agreement. At trial, both Golden and Carleton were questioned on whether they had reached any agreement to allow Carleton to remain on the home tract and, if so, what the terms of that agreement were. While evidence may exist indicating that an agreement may have been reached, such as Carleton's uninterrupted payment of the NBC mortgage and the homeowner's insurance premiums, the trial court specifically found that not all the evidence could be reconciled in order to make all parties speak the truth. The court weighed the evidence and one of its necessary factual findings was that Carleton was obligated to vacate the property and that he failed to do so. Based on those findings, the trial court's judgment, fairly read, held that Carleton had at the least forfeited his right to redeem the home tract.
Under our standard of review, we cannot question the trial court's factual findings unless they are plainly and palpably wrong or against the preponderance of the evidence. We cannot conclude that they were. Therefore, the trial court did not err in concluding that Carleton forfeited his right to redeem at least the home tract when he failed to vacate after a demand that he do so was made.
 II.
Shealy next argues that even if Carleton forfeited his right to redeem the home tract, the trial court's December 8 order was overly broad. The order stated that Shealy, as Carleton's assignee, had forfeited his right to redeem "the real property." Shealy argues that as Carleton's assignee he has a separate and distinct right of redemption to each of the three tracts and that regardless of Carleton's actions with respect to the home tract, he had not forfeited his right to redeem the pasture tract and the subdivision tract.
In Lord v. Blue, 200 Ala. 521, 76 So. 463 (1917), this Court held:
 "[R]edemption may and must be made as a unit, the unit or units being for this purpose determined by the original sale or sales, and not by the purchaser's subsequent subsale of parcels of the unit he may have purchased."
200 Ala. at 522, 76 So. at 464 (emphasis added).
Once one or more tracts of land are sold at a foreclosure sale,[3] the manner in which *Page 273 
those tracts are divided up determines the units in which those tracts "may and must" be redeemed. Redemption must be made in such units; therefore, piecemeal redemption of a portion of that unit is prohibited. In this case, the auctioneer conducted two separate sales. The first sale offered the home tract and the pasture tract as one unit. The second sale offered the subdivision tract. Thus, for purposes of the redemption statutes, these three tracts of land became two units, each of which had to be redeemed in full.
Because Shealy, as Carleton's assignee, forfeited his right to redeem the home tract and because the home tract and the pasture tract were sold as one unit, Shealy forfeited his right to the pasture tract as well. However, there is no evidence indicating that Carleton ever occupied the subdivision tract in frustration of Golden's possessory rights. Golden never demanded that Carleton vacate the subdivision tract. Because no evidence exists from which we can find a forfeiture, we hold that Shealy, as Carleton's assignee, did not forfeit his right to redeem the subdivision tract. Therefore, the trial court erred in ruling that Shealy had forfeited his right to redeem "the real property." Rather, as Carleton's assignee, he forfeited his right to redeem only with respect to two of the three tracts of land at issue — the home tract and the pasture tract.
 III.
The final issue we address is whether Golden furnished a timely statement of lawful charges. Ala. Code 1975, § 6-5-252, requires:
 "Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her. The redeeming party must then tender all lawful charges to the purchaser or his or her transferee. If the purchaser or his or her transferee fails to furnish a written, itemized statement of all lawful charges within 10 days after demand, he or she shall forfeit all claims or right to compensation for improvements. . . ."
(Emphasis added.)
While excusing tender, this section does not relieve a party seeking to redeem from paying any money in order to redeem his property. Rather, the clear meaning of the statutory language "compensation for improvements" is that the purchaser or his transferee forfeits lawful charges based upon his permanent improvements to the property. The thought begun in Ala. Code 1975, § 6-5-252, is continued in the next Code section, § 6-5-253, which provides that "[a]nyone entitled and desiring to redeem real estate . . . must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale . . . and all other lawful charges." Ala. Code 1975, § 6-5-253(a) (emphasis added).
Shealy argues that when Carleton made a written demand for a statement of lawful charges claimed by Golden, Golden did not provide a timely statement. Indeed, at least 13 calendar days elapsed between Golden's receipt of the demand and his furnishing the statement. However, as counsel for Golden explained at trial, "we were relying on Civil Procedure Rule 6 about how to calculate that time." *Page 274 
Rule 6(a), Ala. R. Civ. P., provides, in pertinent part:
 "In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, [or] a Sunday. . . . When the period of time prescribed or allowed is less than eleven (11) days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."
(Emphasis added.)
Were Rule 6(a), Ala. R. Civ. P., the appropriate method for measuring the time prescribed by Ala. Code 1975, § 6-5-252, and therefore were Saturdays and Sundays left uncounted, Golden would have provided his statement of lawful charges on the ninth day, within the 10-day time frame.
Shealy, however, contends that Rule 6(a), Ala. R. Civ. P., is the incorrect authority for counting time in this situation. Rather, Shealy suggests that the time frame established in § 6-5-252 is to be counted in accordance with Ala. Code 1975, § 1-1-4, which provides, in pertinent part:
 "Time within which any act is provided by law to be done must be computed by excluding the first day and including the last. However, if the last day is Sunday, or a legal holiday . . ., the last day also must be excluded, and the next succeeding secular or working day shall be counted as the last day within which the act may be done."
The rule and the statute each suggest that the method of computing time explained therein can apply to various statutes that require a thing be done within a certain time. Rule 6(a) is specifically referenced by various statutes in the Alabama Code. See Ala. Code 1975, § 16-24B-2(4) (defining "legal holiday"); and Ala. Code 1975, § 43-8-1(4) (defining "days"). Ala. Code 1975, § 1-1-4 is also referenced elsewhere in the Code. See Ala. Code 1975, § 43-8-1 (also defining "days") and Ala. Code 1975, § 6-8-62
(providing method to compute time for publishing public notices). From this we can see no clear answer. Our caselaw similarly affords little clarity on this issue.
One clear beacon guides our resolution of this issue. Rule 1(a), Ala. R. Civ. P., provides the scope of the Alabama Rules of Civil Procedure. It states: "These rules govern procedure in the circuit courts and in courts of full, like jurisdiction. . . ." (Emphasis added.) Therefore, we hold that Ala. Code 1975, § 1-1-4, governs the computation of the 10-day time period within which a purchaser or his vendee must provide a statement of lawful charges under Ala. Code 1975, § 6-5-252. We find that Golden failed to timely provide a statement of lawful charges and thus forfeits the right to receive payment for any improvements made to the subdivision tract.
 Conclusion
By failing to vacate the home tract within 10 days of Golden's demand, Carleton and Shealy, as his assignee, forfeited the right to redeem the home tract. Because the home tract was sold as one unit with the pasture tract, Carleton and Shealy, as his assignee, likewise forfeited the right to redeem the pasture tract. Carleton never interfered with Golden's possession of the subdivision tract, and thus did not forfeit the right to redeem this tract. Carleton assigned to Shealy all rights he had to redeem that he possessed. Thus, Shealy *Page 275 
obtained the right to redeem the subdivision tract. Because Golden did not furnish Carleton or Shealy with a timely statement of lawful charges, Golden forfeited the right to be paid for his improvements upon the subdivision tract. We remand this case to the St. Clair Circuit Court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and LYONS, JOHNSTONE, and WOODALL, JJ., concur.
[1] National Bank of Commerce of Birmingham ("NBC") held a higher priority mortgage on the home tract ("the NBC mortgage").
[2] Golden asserted that he "attempted" to pay the NBC mortgage indebtedness in full and that he was not allowed to do so, but he does not offer any further explanation of these statements.
[3] Had Carleton challenged the foreclosure sale, the trial court may have ordered that the three tracts be sold separately.Garris v. Federal Land Bank of Jackson, 584 So.2d 791, 793
(Ala. 1991) ("`"[i]f the property concerned consists of separate parcels which are dedicated to separate and distinct uses, the parcels should be offered separately first,"'" quoting Georgev. Federal Land Bank of Jackson, 501 So.2d 432, 436 (Ala. 1986), quoting in turn, Ames v. Pardue, 389 So.2d 927, 930-31 (Ala. 1980)). Furthermore, "`"[t]his rule applies if the property covered by the mortgage is separated into distinct parcels . . .by the fact that the parcels are not contiguous."'" Garris,584 So.2d at 794 (quoting George, 501 So.2d at 436, quoting in turn Ames, 389 So.2d at 931).
To prevail on this issue, Carleton would have had to challenge the actual foreclosure sale, which he never did. See Garris,584 So.2d at 795 ("[i]n their original complaint, the plaintiffs challenged the amount bid by the Bank at foreclosure"); andGeorge, 501 So.2d at 438 ("the allegations in the counterclaims were sufficient to put the mortgagee on notice that [the mortgagors] were contending that the mortgagee had failed to deal with them fairly; therefore, we believe there is some evidence to support the mortgagors' claim that they seasonably objected to the manner of the foreclosure sale").