[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1100 
These appeals are the result of a dispute over the redemption of certain properties in St. Clair County; the parties were previously before this Court in 2004. At that time, we held that Allen E. Shealy had the right to redeem one of three parcels of land then being held by Jimmy Golden and Wolf Creek Timber Company, Inc. Shealy v. Golden, 897 So.2d 268
(Ala. 2004). On remand from this Court, the trial court entered a judgment setting the price of the redemption of the parcel Shealy was entitled to redeem. Shealy now appeals that judgment, arguing that the price set by the trial court did not take into account a payment that the prior owner had previously made and that the trial court should have sanctioned Golden and Wolf Creek for misrepresentations made in relation to that payment (case no. 1041072). Golden and Wolf Creek cross-appeal, arguing that the trial court erred by prohibiting Golden and Wolf Creek from removing improvements they say they had made to the parcel (case no. 1041098). In the cross-appeal, we affirm; in the appeal, we reverse and remand. Shealy also filed a notice of appeal (case no. 1040990) challenging the trial court's judgment in case no. CV-03-26. That judgment, however, was affirmed on appeal in Shealy v. Golden, 897 So.2d 268 (Ala. 2004), and is thus not a proper judgment from which to bring this second appeal. We therefore dismiss the appeal in case no. 1040990.
 I.
For over 25 years, William Carleton, Jr., and Mary Gail Carleton lived in a house on approximately five acres of land in St. Clair County ("the home tract"). National Bank of Commerce held a mortgage on the home tract. In 1997, the Carletons purchased 107 acres of unimproved pastureland ("the pasture tract") located approximately one-half mile northeast of the home tract. To secure the financing for this purchase, the Carletons gave a mortgage to Union State Bank. The mortgage included both the pasture tract and a second mortgage on the home tract. *Page 1101 
Later in 1997, the Carletons purchased another 125-acre tract of land nearby ("the subdivision tract"). The financing for that purchase was also secured by giving Union State Bank a mortgage, although this mortgage covered only the subdivision tract. Union State Bank subsequently combined the two loans and had the Carletons execute a single promissory note, secured by both the mortgage on the home tract and the pasture tract and the mortgage on the subdivision tract.
In 2002, the Carletons separated, and they defaulted on the promissory note. Union State Bank foreclosed on the mortgages and, at the foreclosure sale, it purchased the home tract and the pasture tract in one transaction for $286,467.28 and the subdivision tract in another transaction for $191,370.96. The combined total of $477,838.24 was $89,741.02 less than the balance then remaining on the promissory note; thus, the Carletons remained indebted to Union State Bank for that amount.
On February 27, 2002, Union State Bank sold all three tracts to Jimmy Golden and Wolf Creek Timber Company, Inc. (collectively "Golden"), conveying title to the home tract and the pasture tract by one deed and title to the subdivision tract by a second deed. Union State Bank also assigned the unpaid balance of the promissory note to Golden.
In August 2002, Golden sued the Carletons, alleging that Union State Bank had assigned him the promissory note, that the Carletons were in default on that note, and that they accordingly owed him $89,741.02, plus interest, on a breach-of-contract claim.[2] The trial court granted Golden's request to consolidate his action (DV-02-73) with the Carletons' divorce action (DR-00-132).
Also in August 2002, a fire destroyed the Carletons' house located on the home tract. The house and its contents were insured by Alfa Insurance Company in the amounts of $140,000 and $20,000, respectively. Alfa subsequently filed a motion in Golden's action to interplead funds, asking the trial court to accept the insurance proceeds and to determine who was entitled to them.
On January 31, 2003, the trial court entered its final judgment in the Carletons' divorce action. Regarding Golden's claims, the court granted Alfa's motion to interplead the insurance proceeds, ordering that Alfa should first pay the holder of the first mortgage on the marital residence. Alfa was to pay any remainder to Golden as the holder of the note secured by the mortgages foreclosed on by Union State Bank. Finally, the court ordered that, upon payment of the insurance proceeds, the case styled "Jimmy Golden v. Gail Carleton and William R. Carleton, Jr.," DV-02-73, consolidated with the divorce action, would be dismissed.
In accordance with this judgment, Alfa promptly delivered $72,225.65 to National Bank of Commerce to satisfy the first mortgage on the destroyed house. It then deposited $67,774.35, the remainder of the proceeds from the policy covering the house, and $20,000.00, the proceeds covering the contents of the house, with the circuit clerk of St. Clair County. On April 3, 2003, the trial court entered its final order in the divorce proceeding, which stated, in pertinent part:
 "[I]n an effort to resolve this matter, William R. Carleton, Jr., along with all parties have agreed to pay [$7,600.00] to the Circuit Clerk of St. Clair County, *Page 1102 
Pell City Division. Upon payment of [$7,600.00] plus payment of two previous drafts totaling [$87,774.35], [Jimmy Golden and Wolf Creek have] agreed to dismiss all claims related to cases numbered DR-00-132 and DV-02-73.
 "Therefore, it is ORDERED, ADJUDGED and DECREED that:
 "1. The Circuit Clerk of St. Clair County pay the [$7,600.00] on deposit to Plaintiffs, Jimmy Golden, Wolf Creek Timber, Inc., and their attorney, Erskine Funderburg.
 "2. All claims made by Plaintiffs, Jimmy Golden and Wolf Creek Timber, Inc., against William R. Carleton, Jr., and Mary Gail Carleton are hereby dismissed with prejudice from these proceedings and Defendants William R. Carleton and Mary Gail Carleton are released from all liability with regard to any and all claims made by Plaintiffs, Jimmy Golden and Wolf Creek Timber, Inc., in the above cases."
On February 3, 2003, William Carleton filed a separate action in the St. Clair Circuit Court seeking to redeem all three tracts (case no. CV-03-26 and case no. CV-03-30). On February 20, 2003, Allen E. Shealy moved to intervene, stating that he had purchased Carleton's right to redeem the property and that he was the proper party in interest to the action. In August 2003, following a bench trial, the trial court found that Carleton had forfeited the right to redeem the three tracts because he had failed to vacate the home tract within 10 days of Golden's demand.
On appeal, this Court affirmed in part, reversed in part, and remanded, holding that Carleton had not forfeited his right to redeem the subdivision tract because, unlike the home tract, he had never occupied it in disregard of Golden's lawful demand that he vacate it.[3] Shealy, 897 So.2d at 273. We further held that Golden had forfeited his right to be reimbursed for improvements to the subdivision tract because he had not provided a timely statement of lawful charges to Carleton or Shealy. 897 So.2d at 274.
On remand, the trial court set the redemption price of the subdivision tract at $252,891.00. Shealy paid into court the ordered amount but also moved the trial court to provide an itemized list of the charges included in the redemption price. Golden argued that the redemption price did not include all lawful charges due and moved to alter, amend, or vacate the judgment. On March 1, 2005, after hearing argument from both parties, the trial court amended its earlier order and entered a final judgment setting the redemption price of the subdivision tract at $317,716.81. Shealy paid the additional $64,825.81 in order to complete his redemption of the property but reserved his right to appeal the trial court's judgment.
Shealy has now appealed, and he argues that the trial court erred in including in the redemption price the balance of the promissory note that the Carletons had defaulted on as a lawful charge due Golden. Shealy argues that this debt was previously paid or, in the alternative, that any claim to it is barred by the doctrine of res judicata. Shealy also asks this Court to consider whether the trial court erred by failing to impose sanctions against Golden and his attorney for denying that the debt in question had previously been paid. Golden cross-appeals, arguing that the trial court erred in prohibiting him from *Page 1103 
removing certain improvements he made to the subdivision tract before Shealy's redemption.
 II.
The first issue we consider is whether the trial court properly included the deficiency on the original promissory note in its calculation of the redemption price. On remand, the trial court did not hold a trial or evidentiary hearing to determine the redemption price. Instead, the trial court calculated the price based on evidence previously submitted to the court by the parties. In Bentley Systems, Inc. v.Intergraph Corp., 922 So.2d 61, 70-71 (Ala. 2005), we explained the standard of review applicable under these circumstances:
 "Our standard of review of this case is governed by statute. Section 12-2-7(1), Ala. Code 1975, states:
 "`[I]n deciding appeals, no weight shall be given the decision of the trial judge upon the facts where the evidence is not taken orally before the judge, but in such cases the Supreme Court shall weigh the evidence and give judgment as it deems just.'
 "In a case in which a trial court has not heard live testimony, this Court has held that `a reviewing court will not apply the presumption of correctness to a trial court's findings of fact and that the reviewing court will review the evidence de novo.' Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala. 1999). Our statutory obligation in a case such as this is to `weigh the evidence and give judgment as [we] deem
just.'"
We therefore review de novo the trial court's calculation of the redemption price.
In its final judgment, the trial court itemized the charges included in the redemption price as follows:
 "A. Foreclosure price — $191,370.96
 "B. Interest of 5% from February 4, 2002 through February 4, 2005 — $28,705.64
 "C. Property taxes for 2002, 2003, and 2004 — $8,438.04
 "D. Deficiency on the original promissory note — $89,741.02
 "E. Interest at 5% from February 4, 2002 through February 4, 2005 — $13,461.15
 "F. Credit for property sold — $14,000.00
 "Total required to redeem — $317,716.81"
On appeal, the only amounts at issue are items D and E in the trial court's order — the deficiency on the original promissory note ($89,741.02), and the corresponding interest on that debt ($13,461.15). Golden argues that those amounts were lawful charges under § 6-5-253(a)(4), Ala. Code 1975, which states, in pertinent part:
 "If the redemption is made from a person who at the time of redemption owned the debt for which the property was sold, the redemptioner must also pay any balance due on the debt, with interest as aforesaid thereon to date."
Golden claims that the $95,374.35 he received in the Carletons' divorce action was for the decreased value of the home tract as a result of the destruction of the house, not as payment on the promissory note. He further alleges that Shealy's former attorney implicitly recognized this during the bench trial by asking for a credit equal to that amount toward the redemption price of the home tract.
Shealy argues that items D and E are not lawful charges under § 6-5-253(a)(4) because, he argues, at the time of redemption there was no "balance due on the debt." The debt, Shealy alleges, had already been retired as part of the settlement in the Carletons' divorce action. *Page 1104 
Moreover, regardless of what the $95,374.35 payment represented, Shealy argues that Golden is barred by the doctrine of res judicata from making any claim for the balance due on the promissory note at the time the Carletons defaulted.
The evidence supports Shealy's claim that William Carleton previously paid the balance of the promissory note. Regardless of the arguments Shealy's former attorney made, the trial court's orders in the divorce action make clear that the debt on the promissory note was retired at the time the divorce judgment was entered. That court's January 31, 2003, order explicitly required Alfa to first pay the insurance proceeds to the National Bank of Commerce to pay off the first mortgage on the home tract and then to pay Golden in full the balance of the note that he held on the home tract upon which Union State Bank had foreclosed. The court's April 3, 2003, order stated that Golden was receiving $95,374.35 in the settlement. As Shealy notes, this amount equals almost to the dollar the deficiency balance of $89,741.02 plus the claimed interest at six percent.[4]
The April 3 order also states that "[a]ll claims made by Plaintiffs, Jimmy Golden and Wolf Creek Timber, Inc., against William R. Carleton, Jr., and Mary Gail Carleton are hereby dismissed with prejudice. . . ." Primary among the claims being made by Golden at that time, and accordingly included in the dismissal with prejudice, was the breach-of-contract claim on the promissory note. Because that claim was dismissed with prejudice, Golden cannot now attempt to recover on that claim, albeit as the defendant in a redemption action filed against him, regardless of his success in his initial prosecution of the claim. The doctrine of res judicata prevents it. See LeeL. Saad Constr. Co. v. DPF Architects, P.C.,851 So.2d 507, 517 (Ala. 2002) ("Res judicata, therefore, bars a party from asserting in a subsequent action a claim that it has already had the opportunity to litigate in a previous action."). Accordingly, the trial court erred by including in its calculation of the redemption price the deficiency on the original promissory note, as well as the interest on that deficiency.
 III.
Shealy also appeals the trial court's refusal to sanction Golden or his attorney for their alleged repeated misrepresentations to the court regarding the promissory-note debt. Section 12-19-272(a), Ala. Code 1975, a part of the Alabama Litigation Accountability Act ("ALAA"), § 12-19-270
et seq., Ala. Code 1975, provides:
 "Except as otherwise provided in this article, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys' fees and costs against any attorney or party, or both, who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part. . . ."
The ALAA defines the phrase "without substantial justification" to include an "action, claim, defense or appeal (including any motion) [that] is frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of *Page 1105 
litigation, as determined by the court." § 12-19-271(1), Ala. Code 1975.
The appropriate standard of review of a court's determination of what constitutes "without substantial justification," however,
 "depends upon the basis for the trial court's determination. `[I]f a trial court determines that a party's action, claim, or defense is "without substantial justification," based on the applicability of any one of [the aforementioned terms or phrases in § 12-19-271(1)], that determination will not be disturbed on appeal "unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence."' . . . However, the phrase `groundless in law" clearly calls for a legal determination. Therefore, if the trial court determines that a party's action, claim, or defense is `without substantial justification' because it is `groundless in law,' that determination will not be entitled to a presumption of correctness."
Morrow v. Gibson, 827 So.2d 756, 762 (Ala. 2002) (quoting Pacific Enters. Oil Co. (USA) v. Howell PetroleumCorp., 614 So.2d 409, 418 (Ala. 1993)). Finally, the ALAA states that the award of costs and attorney fees is within the sound discretion of the trial court. § 12-19-273, Ala. Code 1975.
In this case, Shealy characterizes as misrepresentation and misconduct Golden's assertion that the promissory-note debt is a lawful charge that should be included in the redemption price. Thus, the trial court's determination of the issue whether the claim was "without substantial justification" "will not be disturbed on appeal `unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.'" Morrow,827 So.2d at 762.
Shealy was not a party to the divorce action, and it appears that his previous attorney did not have a full knowledge of the terms of the settlement in that case. Shealy claims that it was not until he retained new counsel and that counsel obtained the official record from the divorce action that he learned that the insurance proceeds were paid specifically to satisfy the balance due on the promissory note. Shealy, Shealy's attorney, and the trial judge did not participate in the divorce action; however, Golden and his attorney did. They accordingly can be presumed to have had full knowledge of the terms of the settlement and its relevance to this action and had a duty to accurately represent that settlement to the trial court. See Byrd v. Southeast Enters., Inc.,812 So.2d 266, 270 (Ala. 2001) (holding that a party to a redemption action has an obligation to divulge pertinent or material information to the other party and to the court).
This Court affords the trial court's factual determination a presumption of correctness, and we will not reverse its judgment based on that determination unless the trial court's decision was "clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." See Morrow, 827 So.2d at 762. Shealy's motion for sanctions was before the trial court, and he apprised the trial court of the alleged misrepresentations and misconduct by Golden or his attorney. The trial court nonetheless found that Golden's claim was not "without substantial justification." We express no view on this finding; however, we remand the case to the trial court for further consideration of the issue of sanctions in light of this Court's determination that the evidence supports Shealy's claim that William Carleton previously satisfied the promissory note as well as Golden's duty to disclose *Page 1106 
to the court the terms of the settlement with Carleton.
 IV.
The last issue for this Court's consideration is Golden's cross-appeal, in which he argues that the trial court erred by prohibiting him from removing certain improvements he had made to the subdivision tract before Shealy's redemption. These improvements consist of waterlines and fire hydrants that Golden alleges are valued in excess of $200,000. In Shealy,897 So.2d at 275, we held that Golden forfeited his right to be paid for these improvements because he failed to furnish William Carleton or Shealy with a timely statement of the charges. The trial court issued a written order consistent with this Court's opinion. Upon limited remand from this Court, the trial court issued a written injunction prohibiting Golden from damaging the property and from removing any improvements. Golden now requests this Court to exercise its equitable powers and to allow him to remove the improvements. However, there is no evidence in the record indicating that Golden ever argued to the trial court that principles of equity should allow him to remove the improvements.[5] "This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court."Andrews v. Merritt Oil Co., 612 So.2d 409, 410
(Ala. 1992) (citing Rodriguez-Ramos v. J. Thomas Williams,Jr., M.D., P.C., 580 So.2d 1326 (Ala. 1991)). See alsoTotten v. Lighting Supply, Inc., 507 So.2d 502, 503
(Ala. 1987) ("[O]n appeal, this Court is limited to a review of the record alone, and an issue not reflected in the record as having been raised in the trial court cannot be raised for the first time on appeal.") (citing Mobile Wrecker Owners v.City of Mobile, 461 So.2d 1303 (Ala. 1984)). Accordingly, the trial court's judgment on this issue is affirmed.
 V.
We affirm the judgment of the trial court insofar as it denied Golden's request to remove improvements from the subdivision tract. However, because the debt on the original promissory note was paid as part of the settlement in the Carletons' divorce action, we reverse the trial court's judgment that included that amount and the interest thereon in the redemption price of the subdivision tract. We remand the case to the trial court for reconsideration of the issue of sanctions in light of this Court's holding that the deficiency on the note has been satisfied. On remand, the trial court should remove from the redemption price the amount representing the debt on the original promissory note and the corresponding interest and hold such further proceedings as it deems necessary consistent with this opinion.
1040990 — APPEAL DISMISSED.
1041072 — REVEESED AND REMANDED.
1041098 — AFFIRMED.
HARWOOD, WOOD ALL, STUART, and BOLIN, JJ., concur.
[2] Golden's action also included claims alleging fraud, based on William Carleton's alleged sale of secured collateral (livestock), and unlawful detainer, based on the Carletons' alleged failure to vacate the foreclosed property.
[3] We affirmed the trial court's judgment insofar as it held that Carleton had forfeited his right to redeem the home tract and held that Carleton had effectively forfeited his right to redeem the pasture tract as well because it had been sold in a combined transaction with the home tract at the foreclosure sale. Shealy, 897 So.2d at 272.
[4] In a letter dated January 27, 2003, approximately two months before the settlement in the divorce action, Golden claimed the balance of the deficiency ($89,741.02) plus interest to that date ($5,384.46) was equal to $95,125.48.
[5] In fact, the only evidence in the record on this point is a letter from Golden's attorney stating that Golden was unilaterally removing the improvements based on Shealy's refusal to pay for them. Of course, Shealy's refusal to make payment was based on this Court's holding that Golden had forfeited his right to such a payment. *Page 1107