THOMAS, Judge.
In July 2006, Erica Sumpter Congress executed a mortgage to Mortgage Electronic Registration Systems, Inc. *1166 (“MERS”), as nominee for Mortgage Lenders Network USA, Inc. (“MLN”), and a promissory note for the principal amount of $104,400 in favor of MLN. MLN sold Congress’s note to EMAX Financial Group (“EMAX”); the note contains an indorsement to EMAX. EMAX then sold the note to Residential Funding Company, LLC (“RFC”). The indorsement to RFC is not contained on the note itself; instead, the indorsement is on a separate paper called an allonge. Shortly thereafter, RFC “securitized”[1] Congress’s note and indorsed the note, on the allonge, to “U.S. Bank as trustee.” Congress’s note was placed into the 2007-EMX1 Trust (“the Trust”); U.S. Bank, N.A., is the trustee of the Trust and several other trusts. Section 2.02 of the Pooling and Servicing Agreement (“PSA”) for the Trust acknowledges U.S. Bank’s receipt of the note and associated documentation evidencing transfer of the note into the Trust. Furthermore, the Assignment and Assumption Agreement between the Trust depositor, Residential Assets Securities Corporation (“RASC”), and RFC provides that RFC had indorsed the notes placed into the Trust to U.S. Bank, as trustee, at the time of the agreement in March 2007.
In February 2007, Congress defaulted on her loan payments. Her loan servicer, Homecomings, informed her of her delinquent payments and attempted to work with Congress to bring her loan current. Although Congress brought her loan current, she was eventually unable to continue making payments and defaulted again. Ultimately, in May 2008, GMAC Mortgage, which had merged with Homecomings, notified Congress that her loan was again in default. Although Congress sent a check to GMAC to bring her payments current, the check was not honored because Congress’s account lacked sufficient funds. On June 24, 2008, GMAC referred Congress’s mortgage for foreclosure.
Colleen McCullough, the attorney assigned to handle the foreclosure, testified that she prepared the acceleration letter sent to Congress on July 11, 2008, to notify her that the entire debt was due and that foreclosure was imminent. After she received the acceleration letter, said Congress, she telephoned GMAC and spoke with a representative, who, she said, reassured her that a foreclosure-sale date had not been set and told her that GMAC would continue to work with her to avoid foreclosure. However, McCullough had notice of the foreclosure sale published in the Alabama Messenger for three consecutive weeks — July 12,19, and 26, 2008.
When McCullough checked the title on Congress’s property, she discovered that MERS was listed as the holder of the mortgage. To remedy the possibility that the discrepancy could cloud title to the property, McCullough, using an agreement for signing authority between her law firm, MERS, and GMAC, executed a mortgage assignment on July 29, 2008, transferring the ownership of the mortgage from MERS to U.S. Bank. According to McCullough, the mortgage assignment, although it indicated that the assignment included an assignment of the related indebtedness, was not intended to transfer anything but the mortgage as a way to clear title on the property. McCullough stated that the assignment was not intended to serve the purpose of negotiating the note.
The foreclosure sale was held at the Jefferson County Courthouse on August *1167 12, 2008. U.S. Bank made the winning bid of $49,600 at the foreclosure sale. When Congress failed to yield possession of the property to U.S. Bank after its demand, U.S. Bank filed an ejectment action against Congress on March 31, 2009.[2]
The case was originally tried on October 13, 2009, resulting in a judgment in favor of U.S. Bank entered on November 19, 2009. However, Congress’s postjudgment motion was granted by the trial court on March 11, 2010, and the case was set for a new trial to be held on June 1, 2010. After the conclusion of a three-day trial held on June 1-3, 2010, the trial court entered a lengthy judgment in favor of U.S. Bank on February 23, 2011. After the trial court denied her postjudgment motion, Congress appealed to this court.
On appeal, Congress makes several arguments. She first argues that the trial court’s judgment is void because the foreclosure sale was invalid. She bases this argument on the fact that the assignment of the mortgage to U.S. Bank was not accomplished before its institution of the foreclosure proceedings, thus depriving U.S. Bank of standing to commence those proceedings. See Sturdivant v. BAC Home Loans Servicing, LP, [Ms. 2100245, December 16, 2011] — So.3d-,(Ala.Civ.App.2011). Alternatively, Congress argues that the foreclosure deed was invalid for several reasons. She posits again that U.S. Bank was not entitled to exercise the power of sale because the mortgage had not been assigned to it and because the note had not been indorsed to it; in a related argument, she contends that the mortgage assignment was ineffective because it was a sham in that it recited that it transferred both the mortgage and the underlying indebtedness to U.S. Bank when MERS did not have any interest in the underlying note to transfer and when McCullough admitted that the recitals in the assignment were not true.
Congress next argues that the foreclosure deed was invalid because U.S. Bank failed to follow statutory notice requirements set out in Ala.Code 1975, § 35-10-9, because it did not list the current identity of the holder or owner of the note and mortgage and because it stated that U.S. Bank had been assigned the mortgage when it had not yet been assigned. Congress further asserts that the note and mortgage were separated, making the foreclosure invalid, that U.S. Bank breached its fiduciary duty to her by failing to conduct a sale resulting in a reasonable sales price, and that U.S. Bank did not properly notify her of the assignment of her mortgage and note, her default, or the acceleration of the mortgage debt. Congress also argues that U.S. Bank misrepresented to her that it would follow loss-mitigation procedures and assured her that foreclosure would not occur while she was working with U.S. Bank to bring the mortgage payments current and that U.S. Bank failed to follow certain federal regulations relating to mortgage foreclosures.
Congress argues that the note was not a negotiable instrument, presumably to defeat the trial court’s conclusion that, regardless of whether the note was properly transferred into the Trust, U.S. Bank was its holder and entitled to enforce the note. She also argues that the trial court improperly required her to establish that the allonge was forged, fabricated, or lacked authenticity by clear and convincing evidence. Finally, she complains that the *1168 trial court erred by failing to exclude or strike the allonge to the note, which, she says, was not timely produced in discovery and which, she accuses, was prepared and inserted into the custodial file “on the eve of trial.”
As noted above, the trial court’s judgment was entered after a three-day trial at which the court heard testimony and received numerous exhibits. Thus, our review of the findings of fact on which the judgment is based is governed by the ore tenus rule: “Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” Dixon v. Windsor, 596 So.2d 898, 899 (Ala.1992). However, our review of the legal conclusions reached by the trial court is not governed by the ore tenus rule and is, instead, de novo. Shealy v. Golden, 897 So.2d 268, 271 (Ala.2004).
We find one issue dispositive of this appeal at this time: whether the trial court improperly required Congress to prove forgery or fabrication of the allonge by clear and convincing evidence. Congress’s argument regarding what she was aiming to prove at trial is confusing at best. She litters her argument with the descriptive terms “invalid,” “fraudulent,” and “fabricated.” Although Congress adduced some evidence at trial indicating that digitized signatures could be manipulated and that both digitized signatures and stamped signatures could be easily reproduced, it appears that she was not intent on proving that the signatures on the allonge were forged in the traditional sense. Her evidence that digitized and stamped signatures could be easily reproduced was intended to support her contention that the allonge was, in fact, fabricated well after the alleged transfer of the note to the Trust. She says at the conclusion of her argument on the issue in her appellate brief that the trial judge confused the real issue, about which she states “[ajuthenticity of the business records is qualitatively a different and more fundamental issue than the authenticity of the signature on the allonge that the trial court focuses on.” It appears that Congress wanted to prove that the allonge was fabricated or created after the first trial by U.S. Bank or GMAC in response to her argument that the note had not been properly negotiated to U.S. Bank.
At the beginning of trial, counsel for the parties had a discussion before the trial court about Congress’s failure to file objections to the authenticity of U.S. Bank’s exhibits within the time specified in the pretrial scheduling order. Apparently, although Congress filed no objections before trial, on the morning of trial, counsel for Congress indicated that she did object to the authenticity of certain exhibits, including the allonge. The trial court stated that it intended to admit all exhibits and stated that “if [Congress] can show that some shenanigans were going on, I’ll consider that when I decide the case.” At the time the copy of the note with the attached allonge and the copy of the entire custodial file, which also contains a copy of the note and allonge, were entered into evidence, Congress did not object. Instead, she questioned witnesses regarding where the allonge had been located in the custodial file and when and how it might have been created.
The trial court was correct in stating that the signatures on the note and allonge are “presumed to be authentic and authorized” under the Uniform Commercial Code (“the UCC”). Ala.Code 1975, § 7-3-308(a). Likewise, Ala. R. Evid. 902(9) pro *1169 vides that “[e]xtrinsic evidence of authenticity as a condition precedent tó admissibility is not required with respect to ... [c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.” Thus, the allonge itself and the signatures thereon are presumed to be authentic and authorized, and U.S. Bank was not required in the first instance to establish the allonge’s authenticity to ensure its admissibility.
However, despite any presumptions in favor of the authenticity of the allonge or its signatures, Congress was entitled to challenge their authenticity. U.S. Bank does not dispute that right, but it insists that the trial court properly required Congress to present clear and convincing evidence of forgery or fabrication of the al-longe. Although U.S. Bank argues that a forgery on a note must be shown by clear and convincing evidence in situations in which a signature is presumed valid, the Official Comment to § 7-3-S08(a) states otherwise:
“ ‘Presumed’ is defined in Section [7-]l-201 [3] and means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence. The defendant’s evidence need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant’s favor. Until introduction of such evidence the presumption requires a finding for the plaintiff. Once such evidence is introduced the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff.”
In its brief, U.S. Bank relies on cases involving properly recorded deeds, which are presumed valid and which may be impeached only by clear and convincing evidence. See, e.g., Thompson v. Mitchell, 337 So.2d 1317, 1318 (Ala.1976) (“This court has said that proper execution and recordation of a deed is prima facie evidence of its due execution and one attacking such a deed as a forgery must show that it was a forgery by clear and convincing evidence, reaching a high degree of certainty, leaving no doubt of the truthfulness of such fact.”). However, the note is not a deed, and the UCC and not the common law concerning deed forgeries applies to questions regarding its authenticity. As the above-quoted comment makes very clear, the only burden on one attempting to rebut the presumption in favor of a signature on a note is to provide substantial evidence to refute the presumption. If the presumption is rebutted, the trial court then evaluates the issue under a preponderance-of-the-evidence standard. As we explained above, however, Congress appears to be arguing not that signatures on the allonge are forged or otherwise invalid to prevent enforce *1170 ment of the note, but that the allonge was fabricated or, essentially, created after the first trial in order to remedy the apparent defect in the chain of indorsements. Thus, despite the reliance on § 7-3-308 by the trial court and the arguments of the parties respecting its meaning, we conclude that that code section has no application here.
Nevertheless, the trial court required that Congress meet a higher burden than was required in order to prove her contention that the allonge was fabricated. There is no rational basis for the application of the clear-and-convincing-evidenee standard of proof to this particular fact question. The trial court was presented with indirect evidence indicating that the allonge was part of the custodial file at least by August 2007. Congress challenged that evidence by presenting the testimony of Thomas J. Adams, an expert in mortgage securitization, who stated that the fact that the allonge was physically located in a different part of the custodial file indicated to him that it had been created at a later time. In addition, as the trial court noted in its judgment, there was some confusion regarding where the custodial file was actually kept pending GMAC’s request for the file, which, the trial court stated, at least indicated “an opportunity for the documents to be altered or manipulated.”
The trial court should have evaluated the issue whether the allonge had been created after the first trial under the pre-ponderanee-of-the-evidence standard. Because it used the higher clear-and-convincing-evidence standard to evaluate Congress’s evidence, this court has no choice but to reverse the trial court’s judgment and remand the cause to the trial court for it to evaluate the evidence adduced at trial under the appropriate standard of proof. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994) (explaining that an appellate court, once it determines that a trial court has improperly applied a higher burden of proof to an issue, must “reverse! ] the judgment and remand! ] the cause to allow the trial court to make its determination from the disputed evidence, using the correct standard”).
In light of our reversal of the judgment on this particular issue, and because the trial court’s determination on this issue on remand may affect the other issues raised by Congress in this appeal, we pretermit discussion of Congress’s other issues. See Favorite Market Store v. Waldrop, 924 So.2d 719, 723 (Ala.Civ.App.2005) (stating that this court would pretermit discussion of further issues in light of dispositive nature of another issue).
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and MOORE, JJ., concur.
THOMPSON, P.J., and BRYAN, J., concur in the result, without writings.

. According to the parties’ briefs, a note is "securitized” when numerous mortgage notes are combined into a pool, which, in turn, is divided into smaller parts that are sold to investors as mortgage-backed securities.

. As the trial court explained in its judgment, Congress’s stepmother, Henrietta Jackson, was named as a defendant because she was present in the residence when service was attempted on Congress. However, Jackson did not reside in the residence, and she was dismissed as a party.

. Although the Official Comment to § 7-3-308 refers to § 7-1-201, the definition of "presumed” is no longer contained in that code section. Instead, § 7-1-206 explains the use of presumptions under the UCC, stating: “Whenever this title creates a 'presumption' with respect to a fact, or provides that a fact is ‘presumed,’ the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.”